David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
5510 So. Fort Apache Rd, Suite 30
Las Vegas, NV 89148
Phone: (702) 856-7430
Fax: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARIO DIAZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANS UNION LLC,<br><br>                    Defendants. | Civil Action No.:  2:19-cv-00020-JCM-VCF<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES[1]**<br><br>**JURY TRIAL DEMANDED** |

---

[1] *See* ECF No. 46.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 1

**JURISDICTION AND VENUE**

1.     This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).   The Court has supplemental jurisdiction over Plaintiff's Nevada state law claims.  *See* 28 U.S.C. § 1367.

2.     This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA"), and the Nevada Revised Statutes, particularly NRS 598C.[2]

3.     Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

**PARTIES**

4.     Plaintiff Mario Diaz ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).  Plaintiff is also a "consumer" as that term is defined by NRS 598C.040.

5.     Defendant Experian Information Solutions, Inc. ("Experian") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to

---

[2] No controlling authority from the Ninth Circuit or the Nevada Supreme Court has interpreted NRS 598C as requiring an inaccuracy in order to prevail.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 2

third parties, and uses interstate commerce to prepare and/or furnish the reports.  Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and a "Reporting Agency" as that term is defined by NRS 598C.100.  Experian is doing business in Nevada, with a principal place of business in Ohio.

6.   Defendant Trans Union LLC ("Trans Union") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Trans Union is doing business in Nevada.[3]

7.   Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## FACTUAL ALLEGATIONS – FCRA VIOLATIONS

### *General Allegations*

8.   The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the

_____

[3] On March 27, 2019, Plaintiff filed a notice of settlement with Trans Union.  Because settlement has not yet been fully completed, Plaintiff names Trans Union in this amended complaint.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 3

consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

9.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

10.    In the Ninth Circuit, trial courts are required to construe the FCRA liberally in favor of consumers.[4]

11.    The FCRA entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."[5]  "File," is explicitly defined in the FCRA, and when applied to consumers, means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored."[6]  The Ninth Circuit has defined "file" as all information the CRA maintains on a consumer

_____

[4] *Shaw v. Experian*, 891 F.3d 749, 755 (9th Cir. 2018) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).
[5] 15 U.S.C. § 1681g(a)(1).  This requirement is subject to exceptions in Sections 1681h(a)(1) and 1681g(a)(1)(A)-(B), which are not relevant here.
[6] *Id.* at § 1681a(g).

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 4

that has been, or might be, included in a consumer report on that consumer.[7]

12.   The scope of a consumer report is broad.[8]  Section 1681a(d) defines a consumer report, in part, as a communication from a CRA bearing on a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, or personal characteristics which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) *any other purpose authorized under section 1681b* . . . ."  Section 1681b(a)(2) provides that a consumer report is, *inter alia*, a document provided "in accordance with the written instructions of the consumer to whom it relates."  Similarly, Section 1681i(a)(6)(B)(ii) requires a CRA to provide a consumer with a "consumer report" following any reinvestigation of any item of information on the consumer's file disputed by the consumer, so long as the CRA does not find the dispute frivolous.[9]  Experian has testified that a consumer can request that the results of reinvestigation be sent to a third party per a consumer's request, and in response, Experian would send the entire reinvestigation – which could be a consumer's complete file.[10]  Additionally, Experian has indicated that information appearing on a single tradeline can have multiple sources – not only from the furnisher of account information, but also a consumer, or a third party public records

-------------------------

[7] *Shaw*, 891 F.3d at 759.

[8] *See Reynolds v. Hartford Financial Services Group*, 435 F.3d 1081, 1094 (9th Cir. 2006), *rev'd on other grounds*, 551 U.S. 47 (2007).

[9] *See* 15 U.S.C. § 1681i(a)(3).

[10] *See Cardinali v. Experian*, No. 16-cv-2046-JAD-NJK, ECF No. 140, at ¶ 18 & n.75 (D. Nev. Feb. 19, 2019).

SECOND AMENDED COMPLAINT FOR DAMAGES JURY TRIAL DEMANDED - 5

vendor.[11]   Therefore, even when a furnisher accesses its "own" tradeline data from Experian, the information in question often contains more than just the furnisher's own reported data.[12]

13.   Additionally, Section 1681j(a)(2) requires national consumer reporting agencies to make "all" Section 1681g disclosures to consumers for free during a 12-month period.[13]  Section 1681j(a)(2) explicitly defines such free annual disclosures as a "consumer report."[14]  Thus, Congress has already unambiguously defined a "consumer report" to be a document sent both to third parties and to the consumer himself.

14.   Section 1681j also requires that when a free annual credit report is properly requested, a national consumer reporting agency like Experian must make "all" of the disclosures required under Section 1681g.[15]  In fact, Experian's annual credit request form does not differentiate between sections of Section 1681g.[16]  Requiring consumers to specifically request each discrete item of information under Section 1681g does not comport with the Ninth Circuit's mandatory, consumer-oriented interpretation of the FCRA because it (1) requires consumers to know what is in their file *before* they receive it, (2) requires

---

[11] *See Cardinali*, ECF No. 146-1, at ¶¶ 26-27 (noting that Experian's internal documents showed that Experian had updated a particular tradeline with information from its public records vendor); *Nichols v. Credit Union 1*, No. 17-cv-2337-APG-GWF, ECF No. 96-6, at 206:15:212:7; 244:9-245:3; 246:19-247:6; 248:8-249:2 (D. Nev. June 5, 2019).

[12] The sources of information on a particular tradeline are available in Experian's internal records, but are obviously not available to Plaintiff – which is why Section 1681g imposes the affirmative obligation on consumer reporting agencies to disclose the source of this information.

[13] 15 U.S.C. § 1681j

[14] *See id.* at § 1681j(a)(2).

[15] *Id.* at § 1681j(a)(1).  *See also id.* at § 1681c-1 (requiring all disclosures to be made when a consumer suspects they may have become a victim of fraud).

[16] *See* Annual Credit Request Form, as attached at ECF No. 36-5 (D. Nev. Apr. 9, 2019).

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 6

consumers to become both legal and credit experts with knowledge of the specific

regulatory framework and how those regulations are applied discrete items of information

in their files, and (3) would permit consumer reporting agencies to abscond from their

responsibility to provide all disclosures to consumers for those consumers who did not

know the nuances of statutory law.

15. Therefore, every item of information on a consumer disclosure *might* be provided on a

consumer report for purposes of Section 1681g, and triggers Experian's duty to ensure

reasonable procedures to ensure maximum accuracy of the information related to the

consumer on the consumer reports it prepares, in accordance with Section 1681e(b).[17]

16. In fact, Experian's internal policies disclosed in discovery elsewhere show that Experian

believes the results of reinvestigation must take the form of a consumer report,[18] as well as

suggest that Experian considers a consumer disclosure to be a consumer report:

> It is Experian's policy that consumer reports may not contain any of the
> following information:
> . . . .
> Inquiries related to credit or insurance transactions that are not initiated by
> the consumer (e.g. Prescreen), except on consumer file disclosures available
> only to and viewable by the consumer from Experian's My Customer
> Experience ("MCE");[19]

17. Pursuant to section 1681g, when a CRA discloses to a consumer that consumer's file, the

disclosure must "clearly and accurately" reflect all the information in that consumer's file

---

[17] *See Shaw*, 891 F.3d at 759.

[18] *See Ashcraft v. Experian*, No. 16-cv-2978-JAD-NJK, ECF No. 130 at 10 & n.57 (citing Experian's Fair Credit Reporting Act Policy).

[19] *Leoni v. Experian*, No. 17-cv-1408-RFB-VCF, ECF No.115 at 3, 115-2 (D. Nev. Dec. 13, 2018).

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 7

at the time of the disclosure.  15 U.S.C. § 1681g(a)(1).  The Ninth Circuit evaluates the clarity and accuracy of a disclosure by recourse to how an average consumer would view them.[20]

18.  As discussed below, the Defendant CRAs failed to comply with their statutory obligations to provide Plaintiff all information in Plaintiff's consumer file thereby violating the above defined statutory obligations.

19.  Similarly, the Nevada Revised Statutes, particularly NRS 598C, provide additional protections to consumers who seek to ensure the accuracy and privacy of the information reporting agencies store about them.

20.  A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

21.  Reporting and rereporting patently incorrect and/or misleading statements also violates 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

### EXPERIAN FCRA VIOLATIONS

#### *Experian's Reports Violated the FCRA and NRS 598C.*

22.  On September 12, 2017, Experian provided Plaintiff with a Section 1681g consumer disclosure, Report No. 2726-9359-03 ("First Experian Report").  On June 21, 2018,

---

[20] *See Shaw*, 891 F.3d at 759-60.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 8

Experian provided a second Section 1681g disclosure, which also served as a Section 1681i consumer report, Report No. 3152-8885-77 ("Second Experian Report").

23.   These reports were properly requested, and Experian was obligated to provide all of its Section 1681g disclosures, without limitation, in connection with at least the First Experian Report, as Section 1681j required Experian to make "all" of the disclosures pursuant to Section 1681g without limitation.

24.   The First and Second Experian Reports contained multiple violations of Section 1681g and NRS 598C.

25.   Pursuant to section 1681g, when a CRA discloses to a consumer that consumer's file, the disclosure must "clearly and accurately" reflect all the information in that consumer's file at the time of the disclosure.  15 U.S.C. § 1681g(a)(1).  The Ninth Circuit evaluates the clarity and accuracy of a disclosure by recourse to how an average consumer would view them.

26.   The First Experian Report was neither "clear" nor "accurate" with respect to several items of information, as it contained misstatements and omissions which made it misleading and confusing to an ordinary consumer like Plaintiff.

***Experian Violated Section 1681g(a)(1) with Respect to Information Regarding Soft Inquiries.***

27.   Experian failed to provide Plaintiff with all of the information in its "file" in connection with its explanation of inquiries.  The First and Second Experian Reports contained a list of inquiries shared both with others ("Hard Inquiries") and those purportedly only shared with the Plaintiff ("Soft Inquiries").

28.   To explain its Soft Inquiries, Experian explained, "we offer credit information about you to those with a permissible purpose."  However, Experian did not explain the reason why each particular Soft Inquiry had been made.

29.   On information and belief, Experian stores a copy of the permissible purpose any subscriber may have for making an inquiry in its files, and can track the purpose types any third party may have to make an inquiry into a consumer's file.  In fact, Clarity Services, a credit reporting service which advertises itself as "a part of Experian,"[21] provides the purposes for why credit was pulled.[22]

30.   Thus, information about when any soft inquiry was made could and should have been disclosed to Plaintiff in plain-English on him disclosure pursuant to Section 1681g(a)(1). Moreover, as noted above, all information on a consumer disclosure *might* be sent to a third party in a consumer report per the consumer's request.[23]  However, Experian did not provide all of the permissible purposes it had stored.

31.   This failure to disclose a plain-English description of each soft inquiry in Experian's file was confusing to an ordinary consumer like Plaintiff, who would have to guess as to why any consumer report had been furnished.  And, since information on a consumer disclosure

---

[21] *See* Clarity Services, Inc., homepage, available at https://www.clarityservices.com/ (last visited July 21, 2019).

[22] *See* Clarity Services, Inc., *How to Read Your Clarity Report*, at 2, available at https://www.clarityservices.com/wp-content/uploads/2018/11/How-to-Read-Your-Clarity-Report-1.2-110818.pdf (last visited July 21, 2019) ("Clarity Report").  *See also* 15 U.S.C. 1681x (preventing a consumer reporting agency from "circumventing or evading treatment as a consumer reporting agency" by means of, *inter alia*, corporate restructuring).

[23] *See Cardinali*, ECF No. 140, at ¶ 18 & n.75; *Shaw*, 891 F.3d at 759.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 10

*might* include the soft-inquiry information,[24] and since Congress unambiguously defined a consumer disclosure to be a consumer report in Sections 1681i and 1681j, Experian was required to disclose this information.

32.   The confusion regarding Experian's disclosures did not stop with its omission of this information.   In addition, Experian misrepresented when it would permit third parties to access credit.   For example, Experian explained to Plaintiff in its Section 1681g disclosures that "[w]e offer credit information about you to those with a permissible purpose," when in fact on information and belief Experian makes such information available to consumers for purposes which are impermissible in nature.[25]

33.   An example of Experian's misrepresentations occurs in connection with an Experian consumer report called a "Bullseye."   In this product, Experian provides credit information not to consumers, but to third parties.[26]   A Bullseye can contain information from a variety of sources, including the consumer, a third-party furnisher, and even Experian itself.[27] Experian's in-house expert has stated elsewhere that a Bullseye is credit information.[28]

34.   Because a Bullseye represents Experian's providing of credit information to a third party, the report does not meet the exception to a consumer report in Section 1681a(d)(i) as a report "solely as to transactions or experiences between the consumer and the person

---

[24] *See Cardinali*, ECF No. 140, at ¶ 18 & n.75.

[25] *See Foskaris v. Experian*, No. 17-cv-506-KJD-PAL, ECF No. 97 (D. Nev. Mar. 21. 2018).

[26]     *See*     Experian     Bullseye     Product     Sheet,     available     at https://www.experian.com/assets/access/brochures/Bullseye-product-sheet.pdf (last visited July 21, 2019).

[27] *See Cardinali v. Experian*, ECF Nos. 140, at ¶ 18 & n.75, 146-1, at ¶¶ 26-27; *Nichols*, ECF No. ECF No. 96-6, at 206:15:212:7; 244:9-245:3; 246:19-247:6; 248:8-249:2.

[28] *See id.* at ECF No. 97-35, at 223:22-224:2 (D. Nev. Mar. 21, 2018).

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 11

making the report."  This is because Experian is the "person making the report," but the "transaction" is between Experian and a third party, *not* the consumer.  However, Experian has stated elsewhere that it does not request, nor require, a permissible purpose to be offered before a Bullseye is provided – even though the report is a "consumer report" which does not meet a statutory exception under the FCRA.[29]

35. Representing that Plaintiff's credit information would be made available for permissible purposes, while not reporting that him information might be also be made available for purposes not permissible under the FCRA, had the tendency to confuse an ordinary consumer like Plaintiff, in violation of 15 U.S.C. § 1681g.

***Experian Failed to Disclose Its "Behavioral" Data, in Violation of Section 1681g(a)(1).***

36. On information and belief, Experian amasses and maintains an enormous amount of "behavioral" data on consumers, such as household income, purchase history, employment history, education history, type of residence, and even whether an individual is a "dog" or "cat" person.  In particular, Experian has created a credit product known as "OmniView," which it represents is capable of localizing that data at the individual level, as well as "ConsumerView," ostensibly a marketing database.  Experian describes ConsumerView as "the world's largest consumer database," which contains "thousands of attributes on more than 300 million consumers and 126 million households."  In fact, advertisements for ConsumerView represent that the database contains notations on the *entire* United States

---

[29] *See Nichols v. Experian*, No. 17-cv-2337-APG-GWF, ECF No. 51-4, at 29-31 (D. Nev. Sept. 4, 2018).

credit population.[30]   Experian has represented to the Ninth Circuit Court of Appeals that it maintains the ConsumerView database (formerly known as InSource) since 1998.[31]

37.  Experian conceals the information from ConsumerView from Plaintiffs' knowledge. However, On December 19, 2017, an article from cybersecurity firm Upguard was published which described a data breach from Alteryx, which allegedly involved Experian data.  According to the article, Alteryx had left unprotected hundreds of millions of records containing data acquired from Experian.[32]   Alteryx had apparently procured these records from Experian through an Experian product known as "ConsumerView," which it describes ConsumerView as "the world's largest consumer database," which contains "thousands of attributes on more than 300 million consumers and 126 million households."[33]   The data available through ConsumerView includes, but is not limited to

---

[30]      *See*      Experian,      *ConsumerView*,      available      at https://www.experian.com/assets/dataselect/brochures/consumerview.pdf, at 5 (last visited July 21, 2019) ("ConsumerView Brochure").

[31] *See Experian Information Solutions, Inc. v. Nationwide Marketing Services, Inc.*, No. 16-16987, Dkt. 30, at 3 (C.A.9 June 7, 2017).  *But see Alexander v. Equifax Information Services, LLC*, No. 17-cv-139-APG-NJK, ECF No. 97, at 5, 6 (D. Nev. Jan. 10, 2018) ("the ConsumerView marketing database . . . [is] owned by non-party Experian Marketing Services," and that nothing in the FCRA requires Experian to "provide consumers with such information *collected and stored* by a separate affiliate such as non-party Experian Marketing Services.").

[32] *See* Dan O'Sullivan, *Home Economics: How Life in 123 Million American Households Was Exposed Online*, Upguard, available at https://www.upguard.com/breaches/cloud-leak-alteryx (last visited July 21, 2019) ("Upguard Article").  Numerous media outlets have followed up on reporting of the breach, and at least one class-action complaint has been filed.  *See, e.g.*, Thomas Fox-Brewster, *120 Million American Households Exposed in "Massive ConsumerView Database Leak*, Forbes, available at: https://www.forbes.com/sites/thomasbrewster/2017/12/19/120m-american-households-exposed-in-massive-consumerview-database-leak/#384c64f17961    (last visited Dec. 19, 2017); Ryan Grenoble, Experian Data *Breach Exposes Information On 123 Million American Households*, Huffington Post, Dec. 19, 2017, available at https://www.huffingtonpost.com/entry/alteryx-data-breach-123-million households_us_5a39316ae4b0860bf4ab4e24 (last visited Dec. 19, 2017).  *Carson v. Experian*, No. 17-cv-2232-JVS-KES, ECF No. 1, at ¶¶ 31-34 (C.D. Cal. Dec. 21, 2017) ("*Carson*").

[33] *See generally* Upgaurd Article.

consumer (1) age, (2) gender, (3) marital status, (4) presence of children, (5) family status and position, (6) location, (7) homeowner status, (8) education, and (9) occupation.[34] According to news sources, the breached records contained information on "more than 300 million consumers and 126 million households."[35]  The breached Alteryx records, which were contained a single spreadsheet, contained 248 discrete data fields:[36]

| HH_ZeroBasedRecordID | ADDRESS ID | FIPS STATE CODE |
|---|---|---|
| STATE ABBREVIATION | FIPS ZIP CODE | ZIP+4 |
| DELIVERY POINT CODE | CARRIER ROUTE | SHORT CITY NAME |
| CITY NAME | HOUSE NUMBER | PRE DIRECTION |
| STREET NAME | STREET SUFFIX | POST DIRECTION |
| UNIT DESIGNATOR | UNIT DESIGNATOR NUMBER | PRIMARY ADDRESS |
| SECONDARY ADDRESS | ADDRESS QUALITY INDICATOR | FIPS COUNTY CODE |
| COUNTY NAME | LATITUDE | LONGITUDE |
| MATCH LEVEL FOR GEO DATA | TIME ZONE | LIVING UNIT ID |
| PHONE: SPECIAL USAGE PHONE | PHONE: NUMBER 2 | DWELLING UNIT SIZE |
| DWELLING TYPE | HOMEOWNER: PROBABILITY MODEL | HOMEOWNER: COMBINED HOMEOWNER-RENTER |

---

[34] *See id.*
[35] *See generally* Upgaurd Article.
[36] *See id.* at 3-7 (formatting altered).

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 14

| | | |
|---|---|---|
| EST HOUSEHOLD INCOME V5 | INCOME MODEL:ESTIMATED HH CODE V4 | INCOME MODEL:ENHANCED EST HH CODE (SCS) V4 |
| NCOA MOVE UPDATE CODE | NCOA MOVE UPDATE DATE | RECIPIENT RELIABILITY CODE |
| MAIL RESPONDER | HOME BUSINESS | LENGTH OF RESIDENCE |
| NUMBER OF PERSONS IN LIVING UNIT | NUMBER OF ADULTS IN LIVING UNIT | RURAL URBAN COUNTY SIZE CODE |
| ACTIVITY DATE | NUMBER OF CHILDREN IN LIVING UNIT | MOR BANK: UPSCALE MERCHANDISE BUYER |
| MOR BANK: MALE MERCHANDISE BUYER | MOR BANK: FEMALE MERCHANDISE BUYER | MOR BANK: CRAFTS-HOBBY MERCHANDISE BUYER |
| MOR BANK: GARDENING-FARMING BUYER | MOR BANK: BOOK BUYER | MOR BANK: COLLECT-SPECIAL FOODS BUYER |
| MOR BANK: GIFTS AND GADGETS BUYER | MOR BANK: GENERAL MERCHANDISE BUYER | MOR BANK: FAMILY AND GENERAL MAGAZINE |
| MOR BANK: FEMALE ORIENTED MAGAZINE | MOR BANK: MALE SPORTS MAGAZINE | MOR BANK: RELIGIOUS MAGAZINE |
| MOR BANK: GARDENING-FARMING MAGAZINE | MOR BANK: CULINARY INTERESTS MAGAZINE | MOR BANK: HEALTH AND FITNESS MAGAZINE |
| MOR BANK: DO-IT-YOURSELFERS | MOR BANK: NEWS AND FINANCIAL | MOR BANK: PHOTOGRAPHY |
| MOR BANK: OPPORTUNITY SEEKERS AND CE | MOR BANK: RELIGIOUS CONTRIBUTOR | MOR BANK: POLITICAL CONTRIBUTOR |
| MOR BANK: HEALTH AND INSTITUTION CONTRIBUTOR | MOR BANK: GENERAL CONTRIBUTOR | MOR BANK: MISCELLANEOUS |
| MOR BANK: ODDS AND ENDS | MOR BANK: DEDUPED CATEGORY HIT COUNT | MOR BANK: NON-DEDUPED CATEGORY HIT COUNT |

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 15

| | | |
|---|---|---|
| MORTGAGE-HOME PURCHASE: HOME PURCHASE PRICE | MORTGAGE-HOME PURCHASE: HOME PURCHASE DATE | PROPERTY-REALTY: HOME YEAR BUILT |
| PROPERTY-REALTY: HOME LAND VALUE | PROPERTY-REALTY: PROPERTY INDICATOR | ESTIMATED CURRENT HOME VALUE |
| PROPERTY-REALTY: YEAR BUILT CONFIDENCE | PROPERTY-REALTY: YEAR BUILT | AUTO IN THE MARKET: NEW |
| AUTO IN THE MARKET: USED | AUTO IN THE MARKET: USED 0-5 VEHICLE | AUTO IN THE MARKET: USED 6-10 VEHICLE |
| AUTO IN THE MARKET: USED 11+ VEHICLE | BEHAVIORBANK: DONATES TO ENVIRONMENTAL CAUSES | BEHAVIORBANK: CONTRIBUTES TO CHARITIES |
| BEHAVIORBANK: PRESENCE OF CREDIT CARD | BEHAVIORBANK: PRESENCE OF PREMIUM CREDIT CARD | BEHAVIORBANK: INTEREST IN READING |
| BEHAVIORBANK: COMPUTERS-PERIPHERALS | MOSAIC HOUSEHOLD | MOSAIC ZIP4 |
| MOSAIC GLOBAL HOUSEHOLD | MOSAIC GLOBAL ZIP4 | HOUSEHOLD COMPOSITION |
| BEHAVIORBANK: INTEREST IN THE OUTDOORS | BEHAVIORBANK: INTEREST IN SPORTS | BEHAVIORBANK: INVESTORS |
| BEHAVIORBANK: PURCHASED THROUGH THE MAIL | BEHAVIORBANK: CRUISE ENTHUSIASTS | BEHAVIORBANK: INVESTS IN MUTUAL FUNDS-ANNUITIES |
| BEHAVIORBANK: PURCHASE VIA PHONE | BEHAVIORBANK: INTERNET-ONLINE SUBSCRIBER | BEHAVIORBANK: PURCHASE VIA ONLINE |
| BEHAVIORBANK: DOMESTIC TRAVELER | BEHAVIORBANK: FOREIGN TRAVELER | MORTGAGE-HOME PURCHASE: TYPE OF PURCHASE |

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 16

| | | |
|---|---|---|
| MORTGAGE-HOME PURCHASE: MORTGAGE AMOUNT | MORTGAGE-HOME PURCHASE: MORTGAGE LENDER NAME V2 | MORTGAGE-HOME PURCHASE: MORTGAGE RATE TYPE |
| MORTGAGE-HOME PURCHASE: MORTGAGE TERM (IN MONTHS) | MORTGAGE-HOME PURCHASE: MORTGAGE LOAN TYPE | MORTGAGE-HOME PURCHASE: DOWN PAYMENT % |
| MORTGAGE-HOME PURCHASE: DEED DATE OF EQUITY LOAN | MORTGAGE-HOME PURCHASE: EQUITY AMOUNT IN THOUSANDS | MORTGAGE-HOME PURCHASE: EQUITY LENDER NAME V2 |
| MORTGAGE-HOME PURCHASE: EQUITY RATE TYPE | MORTGAGE-HOME PURCHASE: EQUITY TERM | MORTGAGE-HOME PURCHASE: EQUITY LOAN TYPE |
| MORTGAGE-HOME PURCHASE: REFINANCE DEED DATE | MORTGAGE-HOME PURCHASE: REFINANCE AMOUNT | MORTGAGE-HOME PURCHASE: REFINANCE LENDER NAME V2 |
| MORTGAGE-HOME PURCHASE: REFINANCE RATE TYPE | MORTGAGE-HOME PURCHASE: REFINANCE TERM | MORTGAGE-HOME PURCHASE: REFINANCE LOAN TYPE |
| INVESTMENT PROPERTY: ZIP CODE | INVESTMENT PROPERTY: FIPS 2000 STATE CODE | INVESTMENT PROPERTY: PRIMARY (HOUSE) NUMBER |
| INVESTMENT PROPERTY: STREET PRE-DIRECTIONAL | INVESTMENT PROPERTY: STREET NAME | INVESTMENT PROPERTY: STREET SUFFIX |
| INVESTMENT PROPERTY: STREET POST-DIRECTIONAL | INVESTMENT PROPERTY: SECONDARY NUMBER (E.G. APT #) | INVESTMENT PROPERTY: SECONDARY UNIT DESIGNATOR |
| INVESTMENT PROPERTY: CITY NAME | INVESTMENT PROPERTY: TYPE OF INVESTMENT | INVESTMENT PROPERTY: DATE OF WARRANTY DEED |
| INVESTMENT PROPERTY: PURCHASE AMOUNT | INVESTMENT PROPERTY: TYPE OF PURCHASE | INVESTMENT PROPERTY: MORTGAGE AMOUNT |
| INVESTMENT PROPERTY: MORTGAGE LENDER NAME V2 | INVESTMENT PROPERTY: MORTGAGE RATE TYPE | INVESTMENT PROPERTY: MORTGAGE TERM |

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 17

| | | |
|---|---|---|
| INVESTMENT PROPERTY: MORTGAGE LOAN TYPE | INVESTMENT PROPERTY: DEED DATE OF EQUITY LOAN | INVESTMENT PROPERTY: EQUITY AMOUNT |
| INVESTMENT PROPERTY: EQUITY LENDER NAME V2 | INVESTMENT PROPERTY: EQUITY RATE TYPE | INVESTMENT PROPERTY: EQUITY TERM |
| INVESTMENT PROPERTY: EQUITY LOAN TYPE | INVESTMENT PROPERTY: DEED DATE OF REFINANCE LOAN | INVESTMENT PROPERTY: REFINANCE AMOUNT IN THOUSANDS |
| INVESTMENT PROPERTY: REFINANCE LENDER NAME V2 | INVESTMENT PROPERTY: REFINANCE RATE TYPE | INVESTMENT PROPERTY: REFINANCE TERM |
| INVESTMENT PROPERTY: REFINANCE LOAN TYPE | INVESTMENT PROPERTY: ADDITIONAL INVESTMENT FLAG | REALTY MODEL: EST CUR MORTGAGE AMOUNT CONFIDENCE CODE-V2 |
| REALTY MODEL: EST CUR MORTGAGE AMOUNT-CODE V2 | REALTY MODEL: EST CUR MORTGAGE AMOUNT-AMT V2 | REALTY MODEL: EST CUR MONTHLY MORTGAGE PMT CONFIDENCE CODE-V2 |
| REALTY MODEL: EST CUR MONTHLY MORTGAGE PMT-CD V2 | REALTY MODEL: EST CUR MONTHLY MORTGAGE PMT-AMT V2 | REALTY MODEL: EST CUR LOAN-TO-VALUE CONFIDENCE CODE-V2 |
| REALTY MODEL: EST CUR LOAN-TO-VALUE RATIO-V2 | REALTY MODEL: EST AVAILABLE EQUITY CONFIDENCE CODE-V2 | REALTY MODEL: EST AVAILABLE EQUITY-CODE V2 |
| REALTY MODEL: EST AVAILABLE EQUITY-AMT V2 | CHILDREN: AGE 0-18 VERSION 3 | CHILDREN: AGE 0-3 VERSION 3 |
| CHILDREN: AGE 0-3 SCORE V3 | CHILDREN: AGE 0-3 GENDER | CHILDREN: AGE 4-6 VERSION 3 |
| CHILDREN: AGE 4-6 SCORE V3 | CHILDREN: AGE 4-6 GENDER | CHILDREN: AGE 7-9 VERSION 3 |
| CHILDREN: AGE 7-9 SCORE V3 | CHILDREN: AGE 7-9 GENDER | CHILDREN: AGE 10-12 VERSION 3 |

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 18

| | | |
|---|---|---|
| CHILDREN: AGE 10-12 SCORE V3 | CHILDREN: AGE 10-12 GENDER | CHILDREN: AGE 13-15 VERSION 3 |
| CHILDREN: AGE 13-15 SCORE V3 | CHILDREN: AGE 13-15 GENDER | CHILDREN: AGE 16-18 VERSION 3 |
| CHILDREN: AGE 16-18 SCORE V3 | CHILDREN: AGE 16-18 GENDER | PHONE: ACTIVITY DATE |
| CENSUS 2010: TRACT AND BLOCK GROUP | CAPE: AGE: POP: MEDIAN AGE | CAPE: AGE: POP: % 0-17 |
| CAPE: AGE: POP: % 18-99+ | CAPE: AGE: POP: % 65-99+ | CAPE: ETHNIC: POP: % WHITE ONLY |
| CAPE: ETHNIC: POP: % BLACK ONLY | CAPE: ETHNIC: POP: % ASIAN ONLY | CAPE: ETHNIC: POP: % HISPANIC |
| CAPE: DENSITY: PERSONS PER HH FOR POP IN HH | CAPE: HHSIZE: HH: AVERAGE HOUSEHOLD SIZE | CAPE: TYP: HH: % MARRIED COUPLE FAMILY |
| CAPE: CHILD: HH: % WITH PERSONS LT18 | CAPE: CHILD: HH: % MARR COUPLE FAMW- PERSONS LT18 | CAPE: CHILD: HH: % MARR COUPLE FAMW-O PERSONS LT18 |
| CAPE: LANG: HH: % SPANISH SPEAKING | CAPE: EDUC: POP25+: MEDIAN EDUCATION ATTAINED | CAPE: HOMVAL: OOHU: MEDIAN HOME VALUE |
| CAPE: HUSTR: HU: % MOBILE HOME | CAPE: BUILT: HU: MEDIAN HOUSING UNIT AGE | CAPE: TENANCY: OCCHU: % OWNER OCCUPIED |
| CAPE: TENANCY: OCCHU: % RENTER OCCUPIED | CAPE: EDUC: ISPSA | CAPE: EDUC: ISPSA DECILE |
| CAPE: INC: FAMILY INC STATE DECILE | | CAPE: INC: HH: MEDIAN FAMILY HOUSEHOLD INCOME |

38.     Simple comparison of this list with Plaintiff's Experian Disclosures demonstrates that the

disclosures did not contain a great deal of the information from ConsumerView.   For

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 19

example, and for illustrative purposes only, the Disclosures did not contain any notation about whether Plaintiff's household indicated the presence of children; education level; family income; as well as any of the numerous buying preferences.  Experian's omissions stand in contrast to the fact that Clarity Services, which again is "part of Experian," provides data on check cashing details, net monthly income, and banking information.[37]

39. Experian actively markets and sells data analytics products to third parties which use the Experian data from ConsumerView.  Alteryx claims on its website, under the Experian trademark, that by "combining the data blending and advanced analytics of Alteryx with the demographic and behavioral data from Experian, you can append unprecedented insight about your customers and prospects, as well as monitor the changing dynamics of households over time."[38]  Alteryx utilizes the "Experian ConsumerView household file," which contains "consumer demographics, life event, direct response, property, and mortgage information for more than 235 million consumers and 113 million households."[39]  According to Alteryx, this data can be analyzed at the individual level, permitting companies to "analyze potential consumers based on marital status, gender, education, and occupation group."[40]  Alteryx promises that, "Armed with current and five-year projections on lifestyle, attitude, brand preference, media use, and more, you can accurately predict customer demand today, tomorrow, and in the long term."[41]

---

[37] *See* Clarity Report, at 3-4.
[38] Alteryx, *Experian Marketing Services*, available at: https://www.alteryx.com/partners/experian-marketing-services (last visited Dec. 19, 2017).
[39] *Id.*
[40] *Id.*
[41] *Id.*

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 20

1

2

40.   On information and belief, Experian has also created a credit product known as

3      "TrueTouch," which it represents as having the ability to segment consumers into those

4      who are, *inter alia*, (1) tech-savvy, (2) price-cautious, (3) status-focused, (4) adventurous,

5      and (5) impulsive.[42]   Experian markets this data to third parties; it also appears to provide

6      this data for use in the ConsumerView database.[43]   Given that ConsumerView is advertised

7      as having the "freshest" data on "more than 300 million individuals"[44] and contains

8      information on the *entire* United States credit population (including Plaintiff), on

9      information and belief the information in Experian's TrueTouch database contained

10     information regarding Plaintiff.

11

41.   Information from these behavioral databases can be included on a consumer report.   For

12     example, Experian sells a suite of services called "collection advantage."[45]   The

13     "Collection Advantage" services permit the user to combine data from Experian's File One

14     database and a database known as "MetroNet."[46]   According to Experian, the MetroNet

15     "core" database contains "demographic information from INSOURCE[], the nation's

16     largest repository of consumer marketing demographic data."[47]   On information and belief,

17     INSOURCE contains additional "behavioral" data, such as a "Living-unit structure," which

18

19

20

21

22

---

23   [42] *See* https://www.experian.com/assets/marketing-services/product-sheets/true-touch.pdf, at 1-
     2 (last visited Feb. 18, 2018).

24   [43] *See* ConsumerView Brochure, at 6.

25   [44] *See id.* at 3.

     [45] Experian, Collection Advantage, available at

26   http://www.experian.com/assets/consumer-information/product-sheets/2016/pscollection-
     advantage-121216.pdf (last visited Aug. 30, 2018).

27   [46] Experian, MetroNet, available at https://www.experian.com/assets/consumerinformation/
     product-sheets/metronet.pdf (last visited Aug. 30, 2018).

28   [47] *See id.*

"recognizes family members independent of surname and can even identify roommates and group settings."[48]

42.   On information and belief, Experian has provided this "behavioral" data to third parties, either directly or indirectly, who in turn sells the data to third party credit decision-makers.

43.   However, not all of this highly personal, comprehensive, and invasive "behavioral" data from Experian's "ConsumerView" Database appeared on Plaintiff's First Experian Report or Experian Reinvestigation, giving Plaintiff no opportunity to meaningfully review this data, or seek to correct any inaccuracies, as Section 1681g entitled him to do.  Experian's failure to disclose all information it maintained regarding Plaintiff caused him to suffer a concrete informational injury.

44.   Behavioral data can clearly impact a consumer's creditworthiness.  A consumer receiving a credit score also receives factors, or adverse action codes, that were particularly important factors in the score, which "will relate to the information that was contained within the consumer's credit report when it was scored."[49]  A credit score is undisputedly a consumer report.[50]  Experian's internal policies – which it has refused to produce in this case as of the date of this filing – indicate that an item of information is deemed communicated on a credit score if its omission impacts a credit score.[51]

---

[48] Experian, Insource, available at http://www.experian.com/assets/marketingservices/ product-sheets/insource.pdf (last visited Aug. 30, 2018).
[49] May 24, 2013 Rebuttal Report of Kimberly Hughes, *Toliver v. Experian*, *Toliver v. Experian*, No. 12-cv-2436, ECF No 42-8, at 9 (S.D. Tex. June 14, 2013) ("*Toliver* Expert Report").
[50] *See, e.g.*, *Reynolds*, 435 F.3d at 1094.
[51] *See Cardinali v. Experian*, No. 16-cv-2046-JAD-NJK, ECF No. 140, at 13 & n.105 (D. Nev. Feb. 19, 2019) (citing Experian's CIS Compliance Standards: FCRA Core).

45.     Experian's own list of "score factors" in its 2014 File One Appendix indicates the presence of numerous coded "Adverse Action Reasons[s]" which suggest that "behavioral" data can form the basis of a credit score.[52]   Among many examples, Experian add education,[53] length of job,[54] and the type of residence a consumer lives in,[55] can all be score factors. Experian also weighs the length of time since issuance of a social security number (an issue which disproportionately impact recently naturalized citizens).[56]   In fact, Experian's "emerging credit score" considers the presence of a "dispute" to be an adverse reason.[57]

46.     Experian's failure to disclose this behavioral data to Plaintiff in its Section 1681g disclosures rendered these disclosures fundamentally incomplete, misleading, and confusing, and violated Plaintiff's statutorily protected right to privacy.

### *Alternatively, Experian Violated Section 1681g(a)(3) and NRS 598C.*

47.     Alternatively, if contrary to Experian's representations to the Ninth Circuit it did not in fact store its "behavioral" data itself, then it violated Section 1681g(a)(3) of the FCRA, which requires it to disclose the names of all persons who procured a consumer report for any purpose during the six-month period preceding the date of the request.   There is no indication that any of the "soft" inquiries on Plaintiff's First and Second Experian Reports corresponded with transmission of this "behavioral" data, even though Experian routinely

_____

[52] *See generally* Nov. 20, 2014 Experian File One Appendix, *Shaw v. Experian*, No. 16-56587, Dkt. 40-1, at 123-59 of 1185 (C.A.9 Sept. 1, 2017) ("2014 File One Appendix").

[53] *See, e.g.*, 2014 File One Appendix, at 140 of 1185.

[54] *See, e.g., id.* at 140.

[55] *See, e.g., id.*

[56] *See id.* at 139 of 1185.

[57] *See id.* at 129 of 1185.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 23

advertises that its behavioral products are both comprehensive in scope and contain up-to-date information.

48.   Because Plaintiff's Section 1681g disclosures were properly requested, Experian was obligated to provide *all* of the disclosures to him.[58]  Plaintiff did not need to separately request his Section 1681g(a)(1), 12681g(a)(2), 1681g(a)(3), 1681g(a)(4), 1681g(a)(5), or 1681g(a)(6) disclosures.

49.   Experian's failure to disclose the name of the entity which obtained this information would also alternatively violate NRS 598C.130, which provides that Experian must disclose the name of any third party to whom it had transferred information regarding him.

50.   Experian's violations of Section 1681g(a)(3) and NRS 598C.130 totally deprived Plaintiff of any ability to understand and appreciate the types of persons who had obtained him private credit information.

### Experian Failed to Adequately Disclose the Source of Its Names and Addresses, in Violation of Section 1681g(a)(2).

51.   Section 1681g(a)(2) requires a CRA to disclose the sources information in the CRA's file, with certain exceptions not relevant here.  Information about the sources of information better enables the consumer to determine which furnisher is responsible for any inaccurate or fraudulent reporting, and to follow up with that person directly if desired.  Because Plaintiff's Section 1681g disclosures were properly requested, Experian was obligated to provide *all* of the disclosures to him.[59]  Plaintiff did not need to separately request his

---

[58] *See* 15 U.S.C. 1681j(a)(1); 1681g.
[59] *See id.* at §§ 1681j(a)(1); 1681g.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 24

Section 1681g(a)(1), 12681g(a)(2), 1681g(a)(3), 1681g(a)(4), 1681g(a)(5), or 1681g(a)(6) disclosures.

52. While the First Experian Report contained address information for Plaintiff, it did not identify those sources in plain English.  Instead, Experian identified the sources through cryptic, numeric codes, which deprived Plaintiff of any ability to determine its accuracy.

53. Experian told Plaintiff that "we store address information as it is sent to us by your credit grantors or from information contained in public records."  However, Experian did not specify in plain English which specific source of information it had used to obtain the address information Plaintiff had disputed except through their unrecognizable numeric codes, thus frustrating Plaintiff's ability to actually contact these sources to dispute the information.  For example, in the First Experian Report, Experian listed four separate specific address codes, but only *one* of these codes – 0213485368 – was associated with a particular furnisher, with the remaining codes completely absent from the document.

54. For Experian's list of names, Experian provided no explanation of what source corresponded to its "name identification number[s]" at all.

55. Experian's confusing disclosures confounded Plaintiff's ability to actually follow up with the sources of information to dispute inaccurate information.  In so doing, Experian violated Section 1681g(a)(2), which required Experian to disclose the "source" of information for the disputed addresses in a manner which was not confusing to an average consumer like Plaintiff.

56. Name and address information can impact a consumer's creditworthiness. Experian's own list of score factor codes in its 2014 File One Appendix indicates that numerous credit

scoring products include address information as potential "risk factors."[60]  Moreover, it is

axiomatic that addresses can serve as a factor in determining risk premiums for insurance[61]

or eligibility for employment.[62]

57.     The statutory language of Section 1681g(a)(2) unequivocally requires disclosure of the

source of information, which Experian must make to a consumer clearly and accurately.

Experian knows that it must produce its disclosures in a manner which is understandable

to consumers.  In *Shaw v. Experian*, the Ninth Circuit adopted Experian's argument that it

did not have to disclose the "bits and bytes" of data in its internal systems.[63]  Experian's

use of generic identification numbers confounds its own stated positions, as well as the

Ninth Circuit's controlling opinion in *Shaw*.  Consequently, Experian violated Section

1681g(a)(2).

### *Experian's Violations of Section 1681g(a)(1), 1681g(a)(2), and NRS 598C Were both Negligent and Willful.*

58.     Experian's misrepresentations, omissions, and violations of Sections 1681g(a)(1),

1618g(a)(2), and alternatively Section 1681g(a)(3) and NRS 598C.130, had the tendency

---

[60] *See, e.g.*, Nov. 20, 2014 Experian File One Appendix, *Shaw v. Experian*, No. 16-56587, Dkt. 40-1, at 129, 139-40, 142-43, 146 of 1185 (C.A.9 Sept. 1, 2017) ("2014 File One Appendix"); *Reynolds*, 435 F.3d at 1094 (noting that a response from a consumer reporting agency indicating that it did not have enough information to generate a credit score could qualify as a consumer report).

[61] *See, e.g.*, DMV.org, *Car Insurance Rates 101*, available at https://www.dmv.org/insurance/auto-insurance-rates-101.php (last visited Mar. 5, 2019).

[62] *See, e.g.*, U.S. Const. Art. II, Section 1, Clause 6 (noting that the President must be a natural-born citizen); *see also* City of Boston, *Residency Requirements for City Workers*, available at https://www.boston.gov/departments/human-resources/residency-requirements-city-workers (last visited Mar. 5, 2019) ("Anyone can apply to work for the City, but you must be a resident by your first day of work.  The City passed an ordinance in 1994 that states all workers have to show proof of their residency each year.").

[63] *See Shaw*, 891 F.3d at 758-60.

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 26

to confuse average consumers like Plaintiff.  Experian's reporting of these fundamentally

inconsistent and confusing reporting was willful for the following reasons.

59.    First, the plain language of Section 1681g(a)(1), 1681g(a)(2), and 1681g(a)(3) are explicit

– as Experian has argued itself elsewhere. [64]  For Section 1681g(a)(1), the Ninth Circuit

has been no less explicit, clearly specifying in *Shaw* that all information that might be on a

"consumer report" must be disclosed in a clear and accurate manner.  Congress has defined

a "consumer report" as Section 1681j and 1681i(a)(6)(B)(ii) disclosures.  Since a consumer

must receive *all* Section 1681g disclosures upon request without limitation, and since

Experian's own disclosure forms do not provide for specific categories of Section 1681g

information to be requested, Experian was required to make all of these disclosures to

Plaintiff, but failed to do so.  Its conduct constituted at least a reckless, and consequently

willful, violation of the FCRA.

60.    Second, Experian has full control of the language and presentation of its Section 1681g

disclosures, and knows what credit information it provides to others.  By failing to disclose

the sources of information in its file, or providing misleading information to consumers

regarding when their credit would be accessed and what third parties would have to

demonstrate in order to access the same, Experian willfully violated the FCRA.

61.    Third, Experian knows the content of its disclosures, as well as the content it stores on

consumers.  As explained above, Experian has represented to the Ninth Circuit that it

---

[64] *See Foskaris*, ECF No. 39, at 4 (D. Nev. Nov. 22, 2017) (arguing, in connection with Sections
1681g(a)(1) and 1681g(a)(3) that "Section 1681g explicitly delineates the specific information that
must be provided when Consumer Disclosures are required by the FCRA *or* requested by
consumers.") (emphasis added).

maintains the ConsumerView database, but does disclose the specific information that database contains.   Moreover, Clarity Services, an Experian company, discloses the purposes for which credit was accessed, but Experian does not – even though Experian plainly stores such information.  Because Experian willfully withheld information from Plaintiff which it was obligated to disclose, Experian willfully violated the FCRA.

62.     Fourth, Experian knows which entities accessed the information in its files, and in fact is under a Section 1681e(a) statutory obligation to ensure that consumer reports are only accessed for permissible purposes.  By failing to disclose these third parties, such as Alteryx, Experian willfully violated the FCRA.

63.     Accordingly, Plaintiff is eligible for statutory and punitive damages, as well as an award of attorney's fees and costs.  *See* 15 U.S.C. § 1681n; NRS 598C.190.

64.     Further, because all information in a consumer disclosure can also be information on a consumer report as explained above, Experian's failure to disclose all of the information to Plaintiff in a clear and accurate manner compromised its affirmative obligation to implement reasonable procedures designed to ensure the maximum accuracy of the consumer reports related to Plaintiff which it prepared, in violation of Section 1681e(b). Maximum accuracy is best assured by providing all of the information to Plaintiff so that he could review and, if found to be inaccurate, dispute the same.  Experian's disclosure failures meant that any information held in secret would be more likely to remain inaccurate because Plaintiff would not have an opportunity to review and dispute it.

65.     Even if Experian's conduct as described above did not constitute a reckless disregard of the law, its conduct in all respects was negligent.  Plaintiff has suffered actual damage to his creditworthiness, because Experian's defective disclosures did not provide him with a

reasonable opportunity to fix his credit reporting issues.  Such damage includes but is not limited to a June 23, 2018, denial of a credit card from Chase, in which Plaintiff was informed that Experian had been the source of its reporting; it also includes diminishment of his credit scores based on Experian's own credit-scoring factors, as described above.  In fact, a February 18, 2019 Experian credit report showed sixteen hard inquiries of his Experian file from February 20, 2017 through June 22, 2018.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**ALL DEFENDANTS**

66. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67. The foregoing acts and omissions related to Defendants constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

68. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

69. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

//

//

**SECOND CAUSE OF ACTION**
**VIOLATION OF NRS 598C**
**EXPERIAN ONLY**

70.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though

fully stated herein.

71.     The foregoing acts and omissions related to Experian constitute numerous and multiple

negligent, willful, or reckless violations of NRS 598C, including but not limited to each

and every one of the above-cited provisions of NRS 598C.

72.     As a result of each and every willful violation of NRS 598C, Plaintiff is entitled to actual

damages as the Court may allow pursuant to NRS 598C.190(1) and 598C.200(1); punitive

damages as this Court may allow, pursuant to NRS 598C.190(2); and reasonable attorney's

fees and costs pursuant to NRS 598C.190(3) and 598C.200(2).

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against

Defendants:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. §

  1681n(a)(2);

- an award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §

  1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of

  negligent noncompliance of the FCRA; and

SECOND AMENDED COMPLAINT FOR DAMAGESJURY TRIAL DEMANDED - 30

- any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION
## VIOLATION OF NRS 598C
## EXPERIAN ONLY

- an award of actual damages pursuant to NRS 598C190(1) and 598C.200(1);

- an award of punitive damages pursuant to NRS 598C.190(2);

- an award of costs of litigation and reasonable attorney's fees, pursuant to NRS 598C.190(3) and 598C.200(2); and

- any other relief the Court may deem just and proper.

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 23, 2019

Respectfully submitted,

/s/ *Miles N. Clark*
Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
5510 So. Fort Apache Rd, Suite 30
Las Vegas, NV 89148

David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123

*Attorneys for Plaintiff*