David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 300
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| Mario Diaz,<br><br>                    Plaintiff,<br><br>         v.<br><br>Experian Information Solutions, Inc.<br><br>                    Defendant. | : Civil Action No.:  19-cv-20-JCM-VCF<br>:<br>:<br>: **PLAINTIFF'S RESPONSE TO**<br>: **EXPERIAN'S MOTION TO DIMSISS**<br>: **SECOND AMENDED COMPLAINT**<br>:<br>:<br>: |

Plaintiff Mario Diaz ("Plaintiff") responds to Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Dismiss Plaintiff's Second Amended Complaint ("MTD").[1]

## INTRODUCTION

It is not every day that a defendant refers to a 31-page complaint as "desperately generalized." Despite curing each of the issues the Court identified in its Order granting Experian's prior motion to dismiss but permitting leave to amend, Experian persists in seeking dismissal of Plaintiff's Second Amended Complaint, presumably so it can obtain yet another stay of discovery of a case which is already over nine months old.  Unfortunately for Experian, its arguments for dismissal do not reflect the fact that Plaintiff's amended clearly cure the issues outlined in the Court's prior Order.

Experian's first (and presumably, "best" argument) is that Plaintiff is not actually entitled to amend at all, because despite the fact the Court provided *no deadline to amend in its Order*, corrections to the facts do not count because they came slightly over 30 days after the Court's Order.  Here, Experian suggests that the "law of the case" doctrine forecloses Plaintiff's amendments, but fails to inform the Court that exceptions to the doctrine – which include clear error or manifest injustice – are plainly applicable here.[2]  As a practical matter, adopting Experian's chosen method of advocacy would force parties to file unnecessary briefs outlining every iota of a judicial opinion which they found disagreeable, even if the Court already contemplated such issues being addressed in an amended complaint – even though such motions would invariably be mooted through adjudication of an amended complaint.  Experian's approach is inconsistent with Rule 1's mandate that Courts manage cases with the interests of expediency and judicial economy in mind.  But not even Experian is willing to live under its own proposed rule: while it did not object or seek reconsideration of the Court's order finding that Plaintiff had Article III standing, it devotes more than a third of its brief to an Article III

---

[1] ECF No. 52 ("MTD"); *see also* Second Amended Complaint, ECF No. 47 ("SAC"); Order, ECF No. 46 ("Order").  In order to avoid needless and duplicative filing, Plaintiff incorporates by reference the exhibits attached in connection with Experian's prior motion practice, as applicable to the present Motion.  *See* ECF No. 36 ("First MTD Response").  Plaintiff re-urges his request for judicial notice of all exhibits attached under Federal Rule of Evidence 201 as appropriate.  To the degree Experian's arguments mirror those in its prior Motion, Plaintiff also incorporates his arguments in response by reference.

[2] *See, e.g.*, *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

1

standing argument which the Court already considered and rejected.

Experian's substantive arguments fare no better, because Plaintiff unquestionably cured the allegations in his complaint which the Court found lacking.  Among other things, he (1) alleged that he had properly requested *all* of his Section 1681g disclosures; (2) provided additional facts related to why Experian's conduct was both negligent and willful; (3) provided a list of items of information Experian did not disclose to him; and (4) provided allegations demonstrating that a "Bullseye" is sent to third parties, not consumers themselves.  Having cured these and other issues which the Court identified, Plaintiff is entitled to begin discovery on his claims which he has been waiting over seven months to begin.

In sum, Experian's motion to dismiss must be rejected in all respects.

## BACKGROUND

1.  **Summary of Allegations.**

The FCRA entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."[3]  "File," is explicitly defined in the FCRA, and when applied to consumers, means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored."[4]  The Ninth Circuit has defined "file" as all information the CRA maintains on a consumer that has been, or might be, included in a consumer report on that consumer.[5]  The definition of a "consumer report" is contained in Section 1681a(d) and 1681b; the scope of what constitutes a consumer report is "broad."[6]  Among the "consumer reports" authorized by the FCRA under Section 1681b is a document sent "in accordance with the written instructions of the consumer to whom it relates."[7]  A credit score is also undisputedly a consumer report.[8]

---

[3] 15 U.S.C. § 1681g(a)(1).  This requirement is subject to exceptions in Sections 1681h(a)(1) and 1681g(a)(1)(A)-(B), which are not relevant here.

[4] 15 U.S.C. § 1681a(g).

[5] *Shaw v. Experian Information Solutions, Inc.*, 891 F.3d 749 (9th Cir. 2018); *see also* SAC, at ¶ 11. *See also* Sept. 12, 2017 Experian Disclosure, Exhibit 4 to First MTD Response; June 21, 2108 Experian Reinvestigation, Exhibit 5 to First MTD Response.

[6] *Id.* at ¶ 12 (citing *Reynolds v. Hartford Financial Services Group*, 435 F.3d 1081, 1094 (9th Cir. 2006), *rev'd on other grounds*, 551 U.S. 47 (2007)).

[7] *Id.*

[8] *Id.* at ¶ 44 (citing *Reynolds*, 435 F.3d at 1094).

When a CRA makes a Section 1681g disclosure to a consumer, the disclosure must "clearly and accurately" reflect all the information in that consumer's file at the time of the disclosure.[9]  The Ninth Circuit evaluates the clarity and accuracy of a disclosure by recourse to how an average consumer would view the disclosure.[10]  Section 1681g(a)(2) requires a CRA to disclose the sources information in the CRA's file, with certain exceptions not relevant to this litigation.[11]  Further, Section 1681g(a)(3) of the FCRA requires it to disclose the names of all persons who procured a consumer report for any purpose during the six-month period preceding the date of the request.[12]  Nothing in Section 1681g suggests that Experian can withhold the information required in Sections 1681g(a)(1), 1681g(a)(2), or 1681g(a)(3) when its makes a Section 1681g disclosure.

Similarly, the Nevada Revised Statutes, particularly NRS 598C, provide additional protections to consumers who seek to ensure the accuracy and privacy of the information reporting agencies store about them.  More specifically, NRS 598C.130 provides that Experian must disclose the name of any third party to whom it had transferred *information* – not merely a consumer report – regarding her.[13]  NRS 598 also provides consumers protection for trade practices deemed deceptive, for which any person can assert a private right of action under NRS 41.600.

In this case, Experian failed to disclose the plain-language permissible purposes on the consumer reports it stores in its files, in violation of Section 1681g(a)(1).[14]  This information *might* appear on a consumer report, because Experian's reinvestigations of disputed information must take this form, and Experian routinely provides some soft-inquiry information on those documents.[15]

Additionally, Experian's witnesses have given conflicting testimony over whether permissible-purpose information would ever appear on a consumer report.  When the issue was directly before the court in *Foskaris v. Experian*, both Experian's 30(b)(6) witness, Mary Methvin, and its in-house expert, Kimberly Cave, testified that such purposes were never disclosed to a third party.[16]  Thereafter, in

---

[9] 15 U.S.C. § 1681g(a)(1).
[10] *See Shaw*, 891 F.3d at 759-60; *see also* SAC, at ¶ 14.
[11] SAC, at ¶ 51.
[12] *Id.* at ¶ 47.
[13] *See id.* at ¶ 49.
[14] *Id.* at ¶¶ 27-35.
[15] *See id.* at ¶¶ 12, 29; *see also* 15 U.S.C. § 1681i(a)(6)(B)(ii).
[16] *See* Excerpts of Further Excerpts of Record, *Foskaris v. Experian*, No. 18-16480, Dkt. 21-1, at

*Cardinali v. Experian*, both Ms. Cave and Ms. Methvin reversed course, and testified that this information *might* be on a consumer report if a consumer requested that its reinvestigation be sent to a third party.[17]  Because *some* plain-English permissible purposes *might* be provided on Experian's consumer reports, Experian had an obligation to provide all of them pursuant to the controlling Ninth Circuit precedent in *Shaw*.[18]

Further, Experian's explanation on its Section 1681g disclosures that it offered his "credit information" to third parties who had a "permissible purpose" to access his credit was a blatant misrepresentation, because Experian has testified that it offers products containing "credit information" for which it does not require *any* permissible purpose at all.[19]  Experian's in-house expert, Kimberly Cave, testified in *Foskaris* that a consumer report called a "Bullseye" contains credit information:

> Q.   Is information on a Bullseye credit
>       information?
> A.    Yes, I believe it is credit information. It's
>       the credit information, again, that that creditor is
>       reporting about that particular consumer which they're
>       identifying to us.[20]

Subsequently, an interrogatory response Ms. Methvin verified in *Nichols v. Experian*, Experian stated that it does not require a permissible purpose before providing a Bullseye to third parties.[21]

Thus, Experian's misrepresentation that it would share Plaintiff's credit information with third parties *only* for a permissible purpose, while excluding the fact that it *also* shared that information with third parties who *had no permissible purpose*, rendered his Section 1681g disclosures fundamentally

F.E.R. 3, 13-14 (9th Cir. Mar, 8, 2019), Exhibit 2 to First MTD Response.

[17] *See id.* at F.E.R. 95, 101.

[18] *See* SAC, at ¶¶ 12, 29.

[19] SAC, at ¶¶ 27-35.

[20] *See Foskaris v. Experian*, No. 17-cv-506-KJD-PAL, ECF No. 97-35, at 223:22-224:2 (D. Nev. Mar. 21, 2018).

[21] *See Nichols v. Experian*, No. 17-cv-2337-APG-GWF, ECF No. 51-4, at 31 of 43, Supp. Response to Interrogatory No. 20 (D. Nev. Sept. 4, 2018) (emphasis in original).  While the interrogatory went on to suggest that Bullseyes contain only the furnisher's "own reported data," Ms. Methvin knows full well that a "Bullseye" does not include only a furnisher's own reported data, as she has declared in the past that Experian has internal policies permitting it to update tradeline-level data based on input from consumers and *without any input from the data furnisher*.  *See Cardinali v. Experian*, No. 16-cv-2046-JAD-NJK, ECF No. 142-40, at ¶¶ 13-16 (D. Nev. Feb. 19, 2019) (attaching Sept. 30, 2016 Declaration from Ms. Methvin in *Pappas v. U.S. Bank Home Mortgage*, No. 15-cv-8115, ECF No. 103-1 (N.D. Ill. Oct, 3, 2016); *see also Leoni v. Experian*, No. 17-cv-1408-RFB-VCF, ECF No. 90, at 6-7 (D. Nev. Nov. 1, 2018) (discussing Experian's internal-update policy).

misleading and confusing, in violation of Section 1681g(a)(1).[22]

Experian also failed to disclose the "behavioral" data it stored for Plaintiff, in violation of Section 1681g(a)(1).[23]  In particular, Experian has made contradictory representations about its level of control over a particular database, ConsumerView, which contains an enormous amount of highly invasive data, including education, employment, charitable contributions, and even whether an individual was a "dog" or a "cat" person.[24]  When arguing to the Ninth Circuit, Experian represented that it maintains the ConsumerView database.[25]  Because Experian's publicly available advertisements show that its credit-reporting products can extract information from a database linked to ConsumerView, the information in ConsumerView *might* be placed on a consumer report (in particular, a report known as "Collection Advantage"), the data from ConsumerView – including its behavioral data – must be disclosed to consumers under Section 1681g(a)(1).[26]

Because Experian has made conflicting representations about the ownership of ConsumerView depending on which Court it appears in front of,[27] Plaintiff pled in the alternative that if Experian in fact disclosed "behavioral" data to an affiliate company in a manner which did not meet a Section 1681a(d) exception, then Experian violated Section 1681g(a)(3) and NRS 598C.130 because it failed to list the name of its affiliate company as one who had received a consumer report.[28]  Finally, Experian failed to disclose the source of all names and addresses it stored for Plaintiff, in violation of Section 1681g(a)(2).[29]

Plaintiff's SAC provides extensive analysis about how these items of information might appear

---

[22] *See* SAC, at ¶¶ 27-35.

[23] *Id.* at ¶¶ 36-46.

[24] *See id.* at ¶ 36.

[25] *See id.* at ¶ 36 & n.30 (citing *Experian Information Solutions, Inc. v. Nationwide Marketing Services, Inc.*, No. 16-16987, Dkt. 30, at 3 (C.A.9 June 7, 2017)).

[26] *See* SAC, at ¶¶ 36-46; *Shaw*, 891 F.3d at 759.

[27] In contrast to its representations to the Ninth Circuit, in the District of Nevada, Experian has represented that "the ConsumerView marketing database . . . [is] owned by non-party Experian Marketing Services," and that nothing in the FCRA requires Experian to "provide consumers with such information *collected and stored* by a separate affiliate such as non-party Experian Marketing Services."  *See* SAC, at ¶ 36 n.30 (citing *Alexander v. Equifax Information Services, LLC*, No. 17-cv-139-APG-NJK, ECF No. 97, at 5, 6 (D. Nev. Jan. 10, 2018)).

[28] SAC, at ¶¶ 47-50.

[29] *Id.* at ¶¶ 51-57.

on credit scores generated by Experian, and noted he had been denied credit from Chase.[30] Additionally, Plaintiff alleged that each and every violation of its these statutory provisions was willful.[31]   Particularly, Experian has complete control of the language it uses to convey its consumer disclosures to consumers, knows what information it is transmitting on its consumer reports, and absolutely knows the makeup of its own credit scores.[32]   This entitles Plaintiff to statutory damages even in the absence of any finding of negligence.

### 2. **Procedural History and the Court's Order.**

Plaintiff originally filed suit on January 3, 2019,[33] and amended it on March 12, 2019.[34]   On June 21, 2019, the Court granted Experian's motion to dismiss the amended complaint.[35]   The Court found that Plaintiff had Article III standing to assert his claims based on Plaintiff's allegations of (1) a credit denial, and (2) diminution of his credit score.[36]   After concluding that Plaintiff had standing, the Court addressed each of Plaintiff's allegations, dismissing them but permitting Plaintiff leave to amend his complaint, and did not provide any deadline for doing so.[37]   On July 23, 2019, Plaintiff filed his Second Amended Complaint.   After receiving an extension of professional courtesy to file its response to the SAC, Experian moved to dismiss on August 22, 2019.[38]

### A. **Article III Standing**

The Court found that Plaintiff sufficiently alleged Article III standing, due to the fact that he alleged a credit denial and diminution of his credit score.[39]   The Court found that "Diaz's alleged injuries are also particularized because they personally and individually affected" him.[40]   Plaintiff's SAC continues to allege these damages.[41]

---

[30] *See id.* at ¶¶ 44-45, 56, 58-65.
[31] *See id.* at ¶¶ 86-89.
[32] *See id.*
[33] ECF No. 1.
[34] ECF No. 25.
[35] *See* Order.
[36] *See id.* at 3-4.
[37] *See id.* at 8.
[38] *See* Motion; *see also* ECF No. 48.
[39] *See* Order, at 3-4.
[40] *See id.* at 4.
[41] *See* SAC, at ¶ 65.

**B.  Permissible Purpose Claim – Section 1681g(a)(1)**

The Court found that for Plaintiff's permissible-purpose claim, "Diaz interprets this to mean the FCRA requires Experian to disclose all the information it has ever stored on the consumer. . . ."[42] Respectfully, this is not what Plaintiff alleged.  Instead, the paragraphs the Court cited never reference the scope of Experian's Section 1681g(a)(1) obligations; but elsewhere in the FAC, Plaintiff clarified that the Ninth Circuit had defined "file" as all information that *might* be included on a consumer report on that consumer.[43]

The Court nonetheless agreed with Plaintiff's restriction of Section 1681g(a)(1) obligations, but then found that that "Diaz argues that Experian violated the FCRA by failing to include the permissible purposes from a 'Bullseye' report in its consumer disclosures," and that "a 'Bullseye' report is not a consumer report because it provides credit information only to consumers."[44]  On this basis, the Court concluded that Experian was not obligated to include information from a "Bullseye" report in a consumer disclosure pursuant to Section 1681g(a)(1).[45]  However, Plaintiff never alleged that a "Bullseye" was provided *only* to consumers.  To the contrary, a Bullseye is provided only to *third parties*, and cited evidence from another case, *Nichols v. Credit Union 1*, in which Experian confirmed that fact.[46]  In order to correct the prior misunderstanding, Plaintiff's Amended Complaint, contains allegations to further clarify that Bullseyes were consumer reports sent not to the *consumer*, but instead to *third parties*.[47]

**C.  Misrepresentation of Permissible Purposes – Section 1681g(a)(1)**

Plaintiff also alleged that by representing that credit information would be disclosed for a *permissible purpose*, Experian's disclosures were misleading and confusing because Experian has testified that it does not require permissible purposes to be made in connection with Bullseye reports.[48]

---

[42] *See id.* at 5 (citing First Amended Complaint, ECF No. 25 ("FAC"), at ¶¶ 14-16).

[43] *See* FAC, at ¶ 11 (citing *Shaw*, 891 F.3d 749 (9th Cir. 2018)).

[44] Order, at 5.

[45] *See id.*

[46] *See* SAC, at ¶ 66 & n.14 (citing *Nichols*, No. 17-cv-2337-APG-GWF, ECF Dkt. 51-4, at 29-31 (D. Nev. Sept. 4, 2018)).

[47] *See id.* at ¶ 33 & n.26 (citing Experian Bullseye Product Sheet, available at https://www.experian.com/assets/access/brochures/Bullseye-product-sheet.pdf (last visited July 21, 2019)).

[48] *See id.* at ¶ 34.

The Court did not appear to address this contention separate from Plaintiff's permissible-purpose allegation, but dismissed it based on the incorrect factual conclusion that Bullseyes are sent to consumers, not third parties.[49]  Plaintiff's amended allegations clarifying the recipients of Bullseye reporting, discussed above, are equally applicable to this claim.

### D.  Behavioral Data Claim – Section 1681g(a)(1)

The Court acknowledged that for Plaintiff's behavioral-data claim, he was entitled to allege that Experian stored that data on information and belief where "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability possible."[50]  The Court concluded that Diaz's allegation that Experian stored the data in question for hundreds of millions of individuals did not rise to the level of mere speculation.[51]  The Court also indicated that Plaintiff had not identified what specific information had been withheld, or that Experian failed to provide him the relevant information in his file.[52]

In response to the Court's concerns, Plaintiff's FAC modified the allegations to state that (1) ConsumerView marketing materials advertised that its database contains notations on the *entire* United States credit population (which would include Plaintiff),[53] (2) according to a 2017 data breach ConsumerView identified 248 discrete fields of information,[54] (3) Plaintiff's Experian disclosures did not contain much of the information contained in those fields,[55] and (4) such data can impact a consumer's creditworthiness.[56]  These allegations, when conjoined with allegations that the ConsumerView data was sent to third parties[57] and that some of the information *might* appear on a consumer report,[58] cure the Court's concerns regarding this allegation.

---

[49] *See* Order, at 5-6.

[50] Order, at 6 (quotation omitted).

[51] *Id.*

[52] *Id.*

[53] *See* SAC, at ¶ 36.  Plaintiff had already pointed out, and re-alleged, that Experian represented to the Ninth Circuit Court of Appeals that it has maintained the ConsumerView database since 1998. *See* FAC, at ¶ 68; SAC, at ¶ 36.

[54] *See* SAC, at ¶ 37.

[55] *See id.* at ¶¶ 38, 43.

[56] *See id.* at ¶ 44.

[57] *See, e.g., id.* at ¶¶ 39-41.

[58] *See, e.g., id.* at ¶ 41.

### E.  Sources and Names and Addresses – Section 1681g(a)(2)

The Court found that for Plaintiff's misrepresentation-of-access claim and names-and-address claim, the Court found that Plaintiff had "not alleged that he requested Experian to include the sources or the name of each person that procured a consumer report."[59]  Plaintiff amended his allegations to allege that he properly requested *all* of his Section 1681g disclosures therein, in part because Section 1681j required Experian to make *all* such disclosures pursuant to Section 1681j *without limitation*.[60]

### F.  Negligence and Willfulness

The Court found that Plaintiff had not adequately alleged that Experian's conduct was either negligent or willful, because he had not alleged facts supporting Experian's required *mens rea*.[61]   In Plaintiff's amended complaint, he added specific allegations of why Experian's conduct was willful: (1) the statutory language governing Experian's conduct was explicit;[62] (2) Experian has control of the language and presentation it provides on its Section 1681g disclosures, and knows what credit information it provided to others;[63] (3) Experian knows the content of its own disclosures;[64] (4) it knows what entities accessed the information in its files.[65]  Plaintiff also alleged that if Experian's failures were not willful, they were unquestionably negligent, and Plaintiff sustained actual damages in the form of a denial of credit and diminution of his credit score.[66]

### STANDARD OF REVIEW

A properly pled complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[67] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[68] "Factual allegations must be enough to rise above the speculative level."[69] To survive dismissal, a

---

[59] Order, at 7.
[60] *See* SAC, at ¶¶ 22-23.
[61] *See* Order, at 7-8.
[62] *See* SAC, at ¶ 59.
[63] *See id.* at ¶ 60.
[64] *See id.* at ¶ 61.
[65] *See id.* at ¶ 62.
[66] *See id.* at ¶ 65.
[67] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[68] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[69] *Twombly*, 550 U.S. at 555.

complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."[70]

District courts must apply a two-step approach when considering motions to dismiss.[71] First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[72]  Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations.[73]  Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[74]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[75] When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed.[76] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense."[77]

A complaint or individual claim should be dismissed without leave to amend only when "it is clear . . . that the complaint could not be saved by amendment."[78]  The Ninth Circuit requires trial courts to liberally construe the FCRA's consumer-oriented objectives.[79]

## ARGUMENT

1. **Experian's Reliance on the "Law of the Case" Doctrine Is Misplaced, and Plaintiff's Amended Complaint Is Not an Untimely Motion for Reconsideration.**

Experian asserts that Plaintiff's amendments cannot be asserted, either because they constitute an untimely motion for reconsideration, or alternatively because the Court's findings are the "law of the case" – apparently because Plaintiff did not seek reconsideration of the Court's order, even though he had permitted leave to amend with no specific time limit.  Boiled to its essence, Experian believes that the SAC contains only "new arguments" which it believes cannot be asserted in an amended

---

[70] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[71] *Id.* at 679.

[72] *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013).

[73] *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.

[74] *Id.* at 679.

[75] *Id.* at 663.

[76] *Twombly*, 550 U.S. at 570.

[77] *Iqbal*, 556 U.S. at 679.

[78] *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

[79] *Shaw v. Experian*, 981 F.3d 749, 755 (9th Cir. 2018) (citing *Guimond v. Trans Union Credit Co.*, 45 F.3d 1329, 1334 (9th Cir. 1995)).

complaint.[80]  Apparently, Experian believes that Plaintiff's new allegations regarding (1) who received Bullseye reports, (2) that Plaintiff requested his Section 1681g(a)(2) and 1681g(a)(3) disclosures, (3) the specific items of information stored which were not on Plaintiff's disclosure, and (4) explication of why Experian's conduct was negligent and willful are all just *arguments*, not *facts*.  One leading dictionary defines a "fact" as "something that has actual existence."[81]  If Plaintiff's amendments do not constitute facts, it is difficult to understand Experian believes a "fact" actually is.

Accepting Experian's argument perverts the Court's intent in permitting amendment because under its grossly distorted conception of "fact," any fact alleged in the SAC designed to address a pleading issue the Court identified would constitute "reconsideration."  This has the practical effect of making it impossible for Plaintiff to amend to add *any* new facts for *any* reason, and would result in *any* amended complaint being summarily denied.  The Court must summarily dispense with this spurious argument.

### A.  Plaintiff's Amended Complaint Is Not an Untimely Motion for Reconsideration.

The Court permitted Plaintiff leave to amend, and did not specify or restrict the scope of amendment; there was no need to independently seek reconsideration of the Court's Order, because amendments could be provided in the amended complaint itself.[82]  Nor did the Court's Order did not provide any specific deadline by which Plaintiff was to amend the complaint, and therefore the deadlines for seeking "reconsideration" do not apply because Plaintiff was given leave to amend his allegations to cure those issues the Court found lacking.[83]

Regardless, Experian attempts to construe Plaintiff's new allegations as a *de facto* motion for "reconsideration" which was untimely because it was filed 32 days after the Court's Order  – *even though the Court did not provide any deadline to amend*.  While Experian would surely appreciate being able to avoid addressing substantive amendments to a pleading which the Court allowed, to do so is simply not what the Court intended.

Nor does it make practical sense or further the goals of judicial economy to impose such a

---

[80] *See* Motion, at 2.
[81]   Merriam-Webster Dictionary, *Fact*, available at https://www.merriam-webster.com/dictionary/fact (last visited Sept. 5, 2019).
[82] *See generally* Order.
[83] *See* Order, at 8.

requirement.   Under Experian's self-chosen advocacy method, parties would be forced to file unnecessary briefs outlining every iota of a judicial opinion which they found disagreeable, even where, as here, the Court already contemplated that Plaintiff would address those issues in an amended complaint.   Thus, every proposed amended complaint would have to be accompanied by a superfluous motion for "reconsideration," filed out of an abundance of caution in the event the Court did not address the merits of an amended complaint prior to the deadline for submitting such a motion.   Worse, because the customary briefing deadlines for motions to dismiss are 14 days for a response and seven for a reply,[84] parties filing amended pleadings would be unable to grant extensions of professional courtesy for a defendants' response to an amended pleading (as Plaintiff did here),[85] and would be obligated to seek consideration of such motions on orders shortening time in order to "preserve" their objections – adding more work to the Court.   This fundamental breakdown of the orderly amendment process cannot possibly be what the Court envisioned when it provided Plaintiff leave to amend.

Experian's method would also unduly delay the course of litigation.   Had Plaintiff filed a motion for "reconsideration," he would have been forced to either (1) await the Court's determination on reconsideration prior to filing the amended complaint, adding to the delay in commencing discovery which has already extended to several months; or (2) file the motion for reconsideration, which would have been denied as moot upon filing of the amended complaint which contained allegations sufficient to resolve the Court's prior concern.   Consequently, Experian's recommended approach is inconsistent with Rule 1's mandate that Courts manage cases with the interests of expediency and judicial economy in mind.[86]

**B.  Experian Avoids Informing the Court that Exceptions to the "Law of the Case" Doctrine Prohibit Its Application in This Case.**

Nor are Experian's law-of-the-case arguments meritorious.   Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by

---

[84] *See* D. Nev. L.R. 7-2.

[85] *See* ECF No. 48.

[86] Finally, and in all candor, it is more respectful to the Court to simply correct issues that a litigant believes may have been overlooked or misinterpreted in a prior ruling without drawing undue attention to them when possible.  Plaintiff attempted to do that here, when he filed his SAC.  Unfortunately, Experian has forced Plaintiff's hand by insisting that a court's prior misinterpretations constitute the "law of the case," which now requires Plaintiff to address them directly.

the same court, or a higher court in the identical case."[87]   However, the rule is subject to a number of exceptions under controlling Ninth Circuit authority, including "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; (5) a manifest injustice would otherwise result."[88]

Experian never informs the Court of the *exceptions* to the law of the case doctrine, but instead argues that a court is *generally* precluded from reconsidering an issue previously decided.   Experian's omission is intentional: mistake of fact plainly satisfies the "clearly erroneous" exception for declining to apply the doctrine here, and if Experian had referred to it, their argument would have collapsed.[89]

For example, in its Order, the Court dismissed Plaintiff's Section 1681g(a)(1) claim that Experian failed to include the permissible purposes for consumer reports it generated.   In ruling, the Court considered Plaintiff's argument that Experian failed to include permissible purposes for a 'Bullseye' report, and concluded that "a 'Bullseye' report is not a consumer report because it provides credit information only to consumers."[90]   On this basis, it concluded that Plaintiff's claim for permissible-purpose information did not meet Section 1681g because a Bullseye would not be shown to third parties.   However, a Bullseye is not sent to consumers – it is sent to third parties.   Numerous cases establish this.[91]   In Plaintiff's amended complaint, Plaintiff corrected this by specifying that Experian sends "Bullseye" reports to third parties.[92]   Application of the "law of the case" doctrine would be manifestly unjust not only because it results from a clearly erroneous result which divests Plaintiff of his claim, but also because the Court did not provide any specific deadline for amending the pleadings in its Order.   Ultimately, the amended complaint corrected the clear error in the Court's

---

[87] *Bible*, 983 F.2d at 154.

[88] *See id.* (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.3d 703, 715 (9th Cir. 1990); *see also Alexander*, 106 F.3d at 876

[89] *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see also Duarte v. Bardales*, 526 F.3d 563, 567 (9th Cir. 2008), *abrogated on other grounds*, *Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014).

[90] Order, at 5.

[91] *See, e.g.*, *Anthory v. Pioneer/Mac, Inc.*, No. 19-cv-44-RFB-VCF, ECF No. 17-4, at 2 (D. Nev. Aug. 5, 2019) (attaching Bullseye sent to third party); *Nichols*, ECF No. 103, at 1 (D. Nev. July 26, 2019) ("Discovery in this matter has been limited to identifying "Bullseye" reports that were obtained from Experian by Credit Union 1. . . .").

[92] *See* SAC, at ¶ 33.

prior decision, and asserted new allegations in accordance with the Court's direction.  Nothing more was required of Plaintiff.

But not even Experian is willing to live with the consequences of its own arguments.  While it did not object or seek reconsideration of the Court's order regarding Article III standing, it nonetheless re-urges an Article III standing argument which the Court already considered and rejected – and for which Experian did not seek reconsideration.[93]  The fact Experian is trying to have its cake and eat it, too says everything the Court needs to reject its new argument.  If anything, it is Experian who has not recognized and conformed its arguments to the Court's prior order.

### 2.   Plaintiff's Section 1681e(b) Claim Is Meritorious.

Experian advances the strawman argument that Plaintiff has made a "frivolous" argument that "all information a CRA has *might* appear on consumer disclosures . . ."[94]  Plaintiff never alleged any such thing.  Instead, paragraph 15 of the SAC alleges that all information on a consumer disclosure *might* be provided on a consumer report, and consequently falls within Section 1681e(b)'s ambit.  Experian goes on to characterize as "frivolous" Plaintiff's argument that "all consumer disclosures are actually consumer reports."[95]  Congress has already made this "frivolous" choice: Section 1681j, which governs free disclosures of information, indicates that such disclosures are *consumer reports*.[96]  Further, Section 1681i(a)(6) requires on reinvestigation that Experian send a *consumer report*.[97]  Experian's witnesses have testified that any item of information appearing on a consumer disclosure could be sent to a third party pursuant to a consumer's request, thus constituting a Section 1681b(a)(2) consumer report.[98]  To Experian, the Court should dispense with these facts because they constitute "linguistic wrangling."[99]  If Plaintiff's argument is "frivolous" and the byproduct of "linguistic wrangling," then both Congress, controlling Ninth Circuit precedent, and Experian's own prior sworn testimony, must all be wrong.  They are not.  Whether interpreting the FCRA *de jure* on its terms or

---

[93] *See Order*, at 3-4; *see also* Motion, at 17-25.

[94] Motion, at 7.

[95] *Id.*

[96] *See also* SAC, at ¶ 59.

[97] *See also* SAC, at ¶ 59.

[98] *See id.* at ¶ 12 & n.10 (citing *Cardinali v. Experian*, No. 16-cv-2046-JAD-NJK, ECF No. 140, at ¶ 18 & n.75 (D. Nev. Feb. 19, 2019)).

[99] Motion, at 7.

*de facto* as applied to Experian's actions, the unmistakable conclusion is that a consumer disclosure *is* a consumer report, and Plaintiff's allegations demonstrate it.

Equally unpersuasive is Experian's claim that the information in question can adversely impact a credit decision. Experian cites no controlling case law suggesting that this is a requirement of a Section 1681e(b) claim, which controlling precedent actually forecloses.[100] Even Experian's chosen case law acknowledges that "[t]ransmission of a credit report or denial of credit as a result of inaccurate credit report information is not necessary" to impose Section 1681e(b) liability.[101]

Even if a "transmission" requirement actually existed, Plaintiff's allegations satisfy it. Each of Plaintiff's claims is accompanied by a discussion of how the item of information in question serve as risk factors in *Experian's own credit-scoring products*, and consequently that show that these items could damage Plaintiff's creditworthiness.[102] Perhaps if Experian had considered *all* of Plaintiff's allegations, instead of an unrepresentative selection, it would have recognized that Plaintiff unequivocally satisfied this concern; among the allegations Experian ignores is the following:

> Further, because all information in a consumer disclosure can also be information on a consumer report as explained above, Experian's failure to disclose all of the information to Plaintiff in a clear and accurate manner compromised its affirmative obligation to implement reasonable procedures designed to ensure the maximum accuracy of the consumer reports related to Plaintiff which it prepared, in violation of Section 1681e(b). Maximum accuracy is best assured by providing all of the information to Plaintiff so that he could review and, if found to be inaccurate, dispute the same. Experian's disclosure failures meant that any information held in secret would be more likely to remain inaccurate because Plaintiff would not have an opportunity to review and dispute it.[103]

Experian's citation to *Johnson v. Wells Fargo Home Mortgage* and *Harrington* are of no moment. *Harrington*'s analysis conflicts with the Ninth Circuit's controlling precedent in *Guimond*, which recognizes consumer-report liability even where no report has been *transmitted*; and Experian's cited passage from *Johnson* does not pertain to Experian's *liability* under the statute, but damages flowing from the violation.[104] Both cases predate *Shaw*.

---

[100] *Guimond*, 45 F.3d at 1333.

[101] *Carson v. Experian*, No. 17-cv-2322-JVS-KES, 2019 WL 3073993, at *7 (citing, *e.g.*, *Guimond*, 45 F.3d at 1333).

[102] *See* SAC, at ¶¶ 44-45, 56, 58-65.

[103] SAC, at ¶ 64.

[104] *See* 558 F. Supp. 2d 1114, 1123 (D. Nev. 2008).

Experian's claim that Plaintiff does not meet the other elements of a Section 1681e(b) claim are equally meritless.   Plaintiff's allegations contain a detailed discussion of why the items of information at issue might impact a consumer's creditworthiness, supported by Experian's own credit-scoring risk factors,[105] and also noted that Experian's reporting to him was incomplete because it did not contain this information.  As the Ninth Circuit has noted, an item of information can be inaccurate either because it is patently incorrect, or because it contains omissions to truthful information that might affect a future credit decision-maker.[106]

In sum, Experian's arguments do not suffice to meet its burden to show that Plaintiff's Section 1681e(b) claim should be dismissed.

### 3.   Plaintiff's Section 1681g and NRS 598C Claims Are Meritorious.[107]

Experian claims that Plaintiff did not allege that Experian might furnish permissible purposes to third parties.[108]  This assertion is false.  Plaintiff, citing Experian's prior sworn testimony, alleged that an *entire* Experian consumer disclosure *might* be sent to a third party.[109]  Therefore, since permissible purposes *might* be on a consumer disclosure and an entire consumer disclosure *might* be provided to a third party, permissible purposes *might* be sent to third parties.  Experian's case citations do not pertain to permissible purposes at all, and predate Experian's testimony confirming Experian's practice as cited in the Complaint.[110]   In fact, the documents attached to Plaintiff's response to Experian's first Motion to Dismiss demonstrate that at least one inquiry purpose for a soft inquiry appeared on the face of Plaintiff's consumer report.[111]

Experian's arguments in support of its motion to dismiss largely mirror those of its prior

---

[105] *See* SAC, at ¶¶ 44-45, 56, 58-65.

[106] *Shaw*, 901 F.3d at 756.

[107] Experian again advances its strawman argument that Plaintiff seeks to extend Section 1681g liability to *all* items of information in the consumer's file, regardless of whether they *might* be contained in a consumer report.  At the risk of repetition, Plaintiff's allegations say nothing of the sort. *See* SAC, at ¶ 15.

[108] *See* Motion, at 10.

[109] *See* SAC, at ¶ 12.

[110] Experian next contends that Plaintiff alleged that *all* information it stores must be disclosed.  *See* Motion, at 10-11.  As noted above, Plaintiff never alleged that.

[111] *See* Exhibit 4 to First MTD Response, at 11 of 14 (noting that a LexisNexis / State Farm inquiry made "for insurance underwriting").

motion.  Experian's citation to *Hanks v. Talbots Classics National Bank*[112] is particularly problematic, because a Bullseye does not contain *only* a consumer's own tradeline information.  Here, Plaintiff alleged that "[a] Bullseye can contain information from a variety of sources, including the consumer, a third-party furnisher, and even Experian itself."[113]  Plaintiff supported his allegations with citation to Experian's prior sworn testimony.[114]  Therefore, unlike *Hanks*, a Bullseye does not contain only a particular furnisher's tradeline information.

Experian next contends that in order to bring a Section 1681g claim against Experian, it must first demonstrate that a report have been impermissibly accessed.  Experian cites no controlling case law for this proposition, because there is none.[115]  Experian's citation to *Alexander v. Equifax Information Services, LLC* – a case presently on appeal[116] – is of no moment, because Plaintiff's allegations are replete with statements that the information Experian provided was misleading and confusing to average consumers like Plaintiff.[117]  Critically, *Shaw* establishes an objective standard for Section 1681g violations: "[o]ur inquiry here is whether the disclosure is 'understandable to the *average* consumer . . . .'"[118]  To the degree *Alexander* sought to impose a subjective standard, it was contrary to this controlling precedent.[119]  Finally, for NRS 598C, Experian promises that Plaintiff's theories have been rejected by a "host" of other courts, but fails to cite a *single case* addressing NRS 598C.  Plaintiff's NRS 598C allegations are sufficient for the same reasons his Section 1681g(a)(3) allegations are.

## A.  Plaintiff's "Permissible Purpose" Claim Is Meritorious.

The Court's order relied on a premise which Plaintiff's SAC disproves: that permissible

---

[112] No. 12-cv-2612-SI, 2012 WL 3236323 (N.D. Cal. Aug. 6, 2012).

[113] SAC, at ¶ 33 & n.27 (citing *Cardinali v. Experian*, ECF Nos. 140, at ¶ 18 & n.75, 146-1, at ¶¶ 26-27; *Nichols*, ECF No. ECF No. 96-6, at 206:15:212:7; 244:9-245:3; 246:19-247:6; 248:8-249:2).

[114] *See id.*

[115] Experian continues to advance its "law of the case" argument as related to whether Bullseyes are provided to third parties.  These arguments have already been addressed above.

[116] No. 17-cv-139-APG-NJK, 2018 WL 3025939 (D. Nev. June 15, 2018), *appeal filed*, No. 19-16824 (9th Cir.).

[117] *See* SAC, at ¶¶ 55, 58.

[118] *Shaw*, 891 F.3d at 759 (quotations omitted).

[119] Indeed, had Plaintiff used Experian's self-chosen magic words that the disclosure was not "understandable to the average consumer" Experian would invariably argue that the allegation was a mere legal conclusion which could be disregarded in its plausibility analysis.

17

purposes *never* appear on a consumer report.  As demonstrated above, this is not the case for Experian.  Because "soft" inquiries *might* be on a consumer report, as alleged in the complaint, Plaintiff pled everything required under *Shaw*'s controlling precedent to allege that the information is within the scope of Section 1681g(a)(1) liability.  Experian's attempt to obtain dismissal of this claim is without merit.

### B.  Plaintiff's Behavioral Data Claim Is Meritorious.

In the original complaint, Plaintiff alleged that Experian likely stored behavioral data on him because, among other things, it stores data on over 120 million U.S. consumers.[120]  In the amended complaint, Plaintiff cited Experian's own marketing material to indicate that Experian maintains information on the *entire* United States credit population – which obviously includes Plaintiff, because Experian's disclosures show maintains credit information on him.[121]  Plaintiff also identified specific information that Experian plainly stored, but which was not included on his disclosure, re-urged his allegations that this information was transmitted to third parties, and added additional facts in that respect.[122]  Plaintiff also specifically identified how this information can impact consumer creditworthiness.[123]  Finally, Plaintiff also re-urged his allegations that some of this data appears on at least one product that not even Experian can argue is a "consumer report": Collection Advantage.[124]  Experian's arguments that "biographical" information does not constitute a "consumer report" are inapplicable.

While Experian complains that "predictors" are not actionable under the FCRA, by extension *every* item of credit information a third party uses to make a credit decision is a "predictor."  Like its inexplicable interpretation of what constitutes a "fact," Experian's suggestion that all of the information in its credit reports are mere "predictors" is a backhanded attempt to categorically avoid liability.   Third parties commonly use the information in a consumer report to *predict* the likelihood that a consumer will either timely repay a debt or not.  Experian's attempt to distort the distinction between ad copy indicating the *value* of the underlying information with its *substance* is of no moment.

---

[120] FAC, at ¶ 68.
[121] SAC, at ¶ 36; *see also* Exhibit 4 to First MTD Response.
[122] *See id.* at ¶¶ 37-38.
[123] *See id.* at ¶ 41.
[124] *See id.*

Whatever defects in this allegation may have existed before, it has been cured, and Experian's contention that the claim is "pure speculation" is without merit.

Experian's contention that it is not clear whether the undisclosed data is *accurate* misreads the statute. Plaintiff has never been able to assess the patent correctness of this data, *because Experian never provided it to him*. If one of the central goals of Section 1681g is to *disclose* information to the Plaintiff so that he can assess the information for correctness, then Experian can avoid liability entirely by simply never disclosing the information in question to Plaintiff. If the Court so finds, it effectively insulates Experian from liability because it will be able to simply not provide data that it actually stores on consumers at all – thus locking the courthouse doors to consumers like Plaintiff entirely.

Regardless, even if the Court adopts Experian's argument, its contention is a red herring because information can be inaccurate *either* because it is patently incorrect *or* is incomplete in a manner which might confuse a credit decision-maker.[125] By failing to disclose all of the information Plaintiff was entitled to obtain, Experian's disclosure was incomplete, and consequently, inaccurate. Plaintiff's allegations satisfy Experian's preferred interpretation.

## C. Plaintiff's Alternative Behavioral Claim, Source-of-Address Claim, and Source-of-Names Claim Are Meritorious.

Experian attempts to argue that the "law of the case" should bar Plaintiff's amendments to his alternative behavioral claim, source-of-address claim, and source-of-names claim. However, the Court specifically identified the "request" language as a pleading defect that needed to be cured,[126] and Plaintiff amended the allegation pursuant to the Court's instruction.[127] Experian's attempt to argue "law of the case" to foreclose a change to these allegations effectively means that *any* proposed amendment would be barred, *even though the Court did not provide any deadline for the amendment in its Order*.[128] Its arguments must be disregarded.

In connection with Plaintiff's source-of-address claim, Experian argues that Plaintiff did not allege that he had requested Section 1681g(a)(2) disclosures. In fact, of the two trial court cases "uniformly holding" that this information is required, one of them, *Natale v. TRW, Inc.*, misquotes

---

[125] *See Shaw*, 891 F.3d at 756 (interpreting Section 1681e(b)).

[126] *See* Order, at 7.

[127] *See* SAC, at ¶¶ 22-23.

[128] Indeed, Experian's argument is likely asserted so that Experian can stay the case yet again on the auspices that its motion covers "all" of Plaintiff's claims.

Section 1681g(a)(2) as "consumer reporting agency shall, *upon written request and proper identification of any consumer,* clearly and accurately disclose to the consumer ... at the time of the request ... the source of information [in its files].").[129]  Simple comparison of the statutory language to *Natale*'s quotation demonstrates that this is incorrect.

Plaintiff respectfully submits that the Court's legal conclusion – which requires ordinary consumers to read and interpret a complex federal statute before they submit disclosure requests – does not comport with the Ninth Circuit's liberal, consumer-oriented interpretation of the FCRA,[130] especially as Experian's *own form* for requesting consumer information *does not even contain* an entry for such information.[131]  Regardless, Plaintiff has cured these allegations pursuant to the Court's instruction.  They should be permitted to go forward.

### D.  Plaintiff Adequately Alleged that Experian's Unlawful Conduct Was Both Negligent and Willful.

Yet again, Experian begins its argument with the specious contention that Plaintiff may not amend his complaint pursuant to the Court's instruction because the Court's decision is now "law of the case."  While Experian contends that Plaintiff's allegations fall "well short" of the requirements, it ignores the significant additional detail to these allegations which has now been provided.  Experian's contentions must be disregarded.

As noted above, Plaintiff's amended complaint cures the Court's concerns that his damages allegations are conclusory.  In Plaintiff's amended complaint, he added specific allegations of why Experian's conduct was willful: (1) the statutory language was explicit;[132] (2) Experian has control of the language and presentation it provides on its Section 1681g disclosures, and knows what credit information it provided to others;[133] (3) Experian knows the content of its own disclosures;[134] (4) it knows what entities accessed the information in its files.[135]  Plaintiff also alleged that if Experian's

---

[129] *See* Motion, at 15 (citing *Natale*, No. 97-cv-3661-CRB, 1999 WL 179678, at *6 (N.D. Cal. Mar. 30, 1999)   at *6 (quoting 15 U.S.C. 1681g(a)(2) as "consumer reporting agency shall, *upon written request and proper identification of any consumer,* clearly and accurately disclose to the consumer ... at the time of the request ... the source of information [in its files].") (emphasis in original).

[130] *See Shaw*, 891 F.3d at 755.

[131] *See* First MTD Response, at Exhibit 3.

[132] *See* SAC, at ¶ 59.

[133] *See id.* at ¶ 60.

[134] *See id.* at ¶ 61.

[135] *See id.* at ¶ 62.

failures were not willful, they were unquestionably negligent, and Plaintiff sustained actual damages in the form of a denial of credit and diminution of his credit score.[136]

### E. As This Court Already Recognized, Plaintiff Has Article III Standing to Pursue His Claims.

#### i.   *The Court Has Already Found that Plaintiffs Had Standing.*

In stark contrast to its contentions that Plaintiff may not amend his complaint because it is now "law of the case," Experian spends approximately nine pages of its brief advocating a position that the Court already rejected: that Plaintiff lacks Article III standing.  Experian cites only a single unpublished trial court case – *Shuckett v. Dialamerica Marketing, Inc.* – in a footnote to support its contention that the Court should reconsider its standing determination even while it refuses to consider Plaintiff's new amendments.[137]  However, *Shuckett* is thoroughly distinguishable because it considered standing for the first time on a motion to dismiss, and then again on *summary judgment*.[138]  Here, the parties remain at the pleading stage, as they were when the Court first ruled on the allegations in Plaintiff's prior complaint.

After setting Experian's duplicitous arguments aside, the Court can easily dispense of Experian's attempt to have its cake and eat it too by concluding that if Plaintiff's allegations were sufficient to establish standing the first time at the pleading stage, they should be good enough the second time around.  Nor has there has been no change in the controlling case law on Article III standing in FCRA claims since the Court entered its order.

Extending the reach of *Shuckett* would have dire impacts on the judicial process.  No longer inhibited by a judicial determination at a specific stage of the case, defendants would likely file motions arguing a lack of Article III standing *ad nauseum* in response to every amended complaint, after every deposition, and after any shred of evidence that supported this position – and then likely seek stays of discovery while their challenge was pending, as Experian requested twice connection with Plaintiff's earlier allegations.[139]  This would not only burden the Court with repetitious motion practice, but also greatly protract the length of cases in the event such stays were granted.  The better rule is to restrict reconsideration of Article III standing at *stages* of litigation.

---

[136] *See id.* at ¶ 65.
[137] No. 17-cv-203-LAB-KSC, 2019 WL 3429184 (S.D. Cal. July 30, 2019).
[138] *Id.* at *2.
[139] *See* ECF No. 24.

Succinctly, the Court has already found that Plaintiff had standing because he alleged a credit denial and damage to his creditworthiness.[140]  Experian's arguments demonstrate nothing more than the fact that it will not be happy until there is absolutely no way for a plaintiff to prove his claims – because not even a credit denial or damage to creditworthiness are enough for Experian to be convinced that they rise past the threshold Article III standard *at the pleading stage*.  If Experian is right, it is difficult to imagine what sorts of claims a Plaintiff would actually have Article III standing to pursue. The simple answer is that Plaintiff has unquestionably demonstrated that he has Article III standing to pursue these claims.

### *ii.   Plaintiff Has Standing to Pursue His Behavioral Data Claims.*

Experian argues that Plaintiff lacks Article III standing to bring his behavioral data claim because it believes that Plaintiff has not alleged that it withheld any information about him from disclosure.   Apparently, Experian missed the detailed factual allegations regarding the types of information that Experian withheld.[141]  Experian also seeks to disclaim marketing materials bearing its logo which explain what information was collected, claiming that reliance on such materials is apparently "improper," though it does not explain how.

Experian next contends that Plaintiff failed to demonstrate that the information in question is subject to Section 1681g(a)(1) liability.  Again, this is false.  Aside from explaining that this data is routinely transferred to at least one third party (Alteryx),[142] and that the information appears on at least one document that is unquestionably a consumer report (Collection Advantage),[143] Experian overlooks the basis for Section 1681g liability: a reporting agency is required to disclose information that *might* be on a consumer report on that consumer – not that it has actually *been* transmitted yet.[144]

Experian's citation to the split-panel, out-of-circuit decision of *Huff v. Telecheck Services, Inc.*[145] is factually distinguishable from this case.  The *Huff* panel appeared to lean on equitable concerns in finding no inaccuracy, specifically that the CRA in question told Huff it stored additional

---

[140] Order, at 3-4.
[141] *See, e.g.*, SAC at ¶¶ 37-38.
[142] *See id.* at ¶ 39.
[143] *See id.* at ¶ 41.
[144] *Shaw*, 891 F.3d at 759.
[145] 923 F.3d 458 (6th Cir. 2019).

22

information about him, which it would only disclose after receiving appropriate identifying information, including the information it previously withheld.[146]  Since the FCRA requires a CRA to request appropriate identifying information from a consumer prior to providing a consumer disclosure, withholding information until receipt of appropriate identifying information was permitted.[147]  Here, by contrast, Experian did not withhold any portion of Diaz's Section 1681g disclosure on the basis that he failed to provide Experian with appropriate identifying information, and the documents submitted in support of his response to Experian's prior motion to dismiss demonstrate that he submitted the same.[148]  In sum, *Huff* is inapplicable.

Experian's final argument is its most problematic: it claims that Plaintiff cannot show any "concrete harm" from the deprivation of the information in question.  Essentially, Experian wants to have its cake and eat it, too.  If one of the objectives of Section 1681g is to provide information sufficient for a consumer to evaluate it for accuracy, then how can the Plaintiff do *anything* if Experian *does not disclose the data it has*?

Experian points to the decision in *Carson v. Experian* as evidence that Courts have rejected a "behavioral data" theory.  However, Experian does not identify key distinctions between *Carson* and this case.  Specifically, Plaintiff Diaz explicitly references *all* of the data exposed in the Alteryx data breach, and identifies some of the items found nowhere on Plaintiff's disclosure;[149] he also compared these items of information to Experian's own risk factors to demonstrate how they might impact his creditworthiness.[150]  These allegations are found nowhere in the *Carson* complaint.[151]

   ***iii.  Plaintiff Has Standing to Pursue His Permissible Purpose and Source-of-Address Claims.***

Experian contends that Plaintiff did not show "real world harm" from its failure to disclose permissible-purpose information and source-of-address claims.[152]  To the contrary, Plaintiff provided

---

[146] *See Huff*, 923 F.3d at 461, 464.
[147] *See* 15 U.S.C. § 1681h(a)(1).
[148] *See, e.g.*, First MTD Response, at Exhibit 4, at 22.
[149] *See* SAC, at ¶¶ 38-39.
[150] *See id.* at ¶ 44.
[151] *See Carson*, ECF No. 57 (C.D. Cal. Nov. 13, 2018).
[152] Experian apparently does not advance its Article III standing argument for the source of Plaintiff's name information.  *See* SAC, at ¶¶ 51-57.

*specific examples* of how addresses served as risk factors in Experian's own credit-scoring products,[153] and further explained that Experian misrepresented how it would disclose his private credit information to others.[154]  The Court has already concluded that the allegations in Plaintiff's FAC sufficed to survive standing.  Experian does not provide any reason for the Court to reconsider a decision already rendered at the pleading stage.

## CONCLUSION

For the above reasons, Experian's MTD should be denied.

Dated: September 5, 2019

Respectfully submitted,

*/s/ Miles N. Clark, Esq.*
Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 300
Las Vegas, NV 89148-7700
Attorneys for Plaintiff; other counsel on first page

---

[153] *See* SAC, at ¶ 56.
[154] *See id.* at ¶¶ 32-35.

24

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2019, and pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO EXPERIAN'S MOTION TO DIMSISS SECOND AMENDED COMPLAINT** was served via the U.S. District Court's electronic filing system to all individuals entitled to receive service thereto. each of the following:

/s/ Miles N. Clark
Knepper & Clark LLC